# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **KIMBERLY STARLING**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ARTHUR W. HENEGAR DDS, MS, P.A.** *d/b/a* **HENEGAR DENTAL,**<br><br>*Defendant*. | Civil Case No.: 3:24-cv-3043<br><br>**COMPLAINT - CLASS ACTION** |

## INTRODUCTION

1. This action arises out of the marketing practices of Defendant, Arthur W. Henegar DDS, MS, P.A. d/b/a Henegar Dental ("Defendant"), that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Defendant sends, or has sent on its behalf, telemarketing text messages to individuals on the National Do-Not-Call Registry that do not have an established business relationship with Defendant and who did not consent to receive Defendant's telemarketing text messages.

3. Defendant also does not maintain an internal-do-not-call list in violation of the TCPA.

4. Accordingly, Plaintiff Kimberly Starling ("Ms. Starling" or "Plaintiff") brings this TCPA action on behalf of herself and a class of similarly situated individuals under 47 U.S.C. § 227(c).

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over Defendant because Defendant is headquartered in this District, conduct business transactions in this District and has committed tortious acts in this District.

7. Venue is proper in this District because Defendant conduct significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**PARTIES**

8. Plaintiff Kimberly Starling ("Starling") is, and at all times mentioned herein was, a citizen and resident of Southlake, Texas.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant Arthur W. Henegar DDS, MS, P.A. is a professional association formed under the laws of the State of Texas doing business as Henegar Dental.

11. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

**TCPA BACKGROUND**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because

2

"telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

13. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

14. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

15. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

16. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

17. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

18. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

19. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

20. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

21. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

22. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

23. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

24. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

25. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

26. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

27. [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

4

provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d). *In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

28. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

29. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

30. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

31. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

32. Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

33. Ms. Starling is the user of a cellular telephone number ending in 6140.

34. Ms. Starling's cellular telephone number ending in 6140 is used for residential purposes.

35. On May 6, 2024, Ms. Starling received the following text message from Defendant:



36. This message came from short code 39858.

37. On June 12, 2024, Ms. Starling received another text message from Defendant, as shown below:



38.   This message came from short code 39016.

39.   On June 13, 2024, Ms. Starling called Defendant at (972) 594-6915 and explained that she was receiving text messages from Defendant and that she was not a patient of Defendant.

40.   Ms. Starling asked if Defendant had her information on file.

41.   Defendant claimed that Ms. Starling was a patient of record and that she was last seen in 2010.

42.   Ms. Starling asked Defendant to add her number to its internal do-not-call list.

43.   Defendant advised that it did not have a do not call list and that she would need to respond to the messages to get them to stop.

44.   On July 25, 2024, Ms. Starling received another text message from Defendant, as shown below:

8



45.     This message came from short code 83170.

46.     Upon information and belief, Defendant devised a marketing campaign to attract new patients to its practice by sending text messages to the telephone numbers Defendant obtained when it acquired another practice.

47.     Upon information and belief, Defendant did not scrub these telephone numbers against the National Do-Not-Call Registry before calling them.

48.     Upon information and belief, Defendant devised a marketing campaign to attract new patients to its practice by sending text messages to individuals that were no longer active patients.

49.     Upon information and belief, Defendant did not scrub these telephone numbers against the National Do-Not-Call Registry before calling them.

50.     Ms. Starling did not provide prior express invitation or permission or consent for

these calls. To the contrary, she asked to be added to Defendant's do not call list.

51. Defendant, Defendant's agents, or those otherwise sending text messages on Defendant's behalf, did not have written do-not-call policies or procedures at the time of the texts to Plaintiff and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the text message to Ms. Starling after she asked to be placed on Defendant's do-not-call list.

52. Defendants' violations were negligent.

53. Alternatively, they were willful and knowing.

54. Ms. Starling and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendant's text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the text messages. The text messages were annoying and a nuisance, and wasted the time of Ms. Starling and the classes. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANTS' LIABILITY**

55. Defendant made two or more telephone solicitations to Ms. Starling, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

56. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Starling is entitled to $500 per text through 47 U.S.C. § 227(c).

57. Ms. Starling is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

58. Defendant sent two or more telemarketing texts to Ms. Starling despite not having in place the required policies and procedures prior to sending such messages and failing to honor Ms. Starling's do not call/text request. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

59. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Starling is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

60. Ms. Starling is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of three proposed "Classes" as defined as follows:

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

("Registry Class")

> Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing text messages in a 12-month period, during the time period when Defendant did not have in place an internal do-not-call list from four (4) years prior to the filing of the Complaint to the date of class certification.

("Internal Do Not Call Class")

> Plaintiff and all residents of the State of Texas to whose telephone number Defendants placed (or had placed on their behalf) a telemarketing call or text messages, from four years prior to the filing date of the Complaint through class certification

("Texas § 305.053 Class") (The Registry Class, the Internal Do Not Call Class and the Texas Class are collectively referred to herein as the "Classes.")

62. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

63. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

64. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

- The time period(s) during which Defendant sent its text messages;
- The telephone numbers to which Defendant sent its text messages;
- The telephone numbers for which Defendant had prior express written consent;
- The purposes of such text messages and calls; and
- The names and addresses of Class members.

65. Upon information and belief, the Classes are comprised of hundreds, if not thousands, of individuals.

66. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

- Whether Defendant (or someone acting on its behalf) sends telemarketing text messages;

- Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

- Whether Defendant calls or sends solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

- Whether Defendant had the required policies and procedures prior to sending telemarketing text messages;

- Whether Defendant's statutory violations were willful and knowing; and

- Whether Defendant should be enjoined from engaging in such conduct in the future.

67. Plaintiff is a member of the Classes in that Defendant sent two or more texts for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, during the time period when Defendant admitted it did not have an internal do-not-call policy and while her telephone number was on the National Do-Not-Call Registry.

68. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

69. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

70. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

71. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

72. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

73. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

74. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

75. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Registry Class)

76. Plaintiff and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

77. Defendant sent, or had sent on its behalf, text messages constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

78. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the texts.

79. Plaintiff and putative Registry Class Members each received two or more such text messages in a 12-month period.

80. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

81. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)

**(On behalf of Plaintiff and the Internal Do Not Call Class)**

82. Plaintiff and the proposed Internal Do Not Call Class incorporate the foregoing allegations as if fully set forth herein.

83. Defendant sent numerous text messages for telemarketing purposes to Plaintiff's and putative Internal Do Not Call Class Members' telephone numbers.

84. Defendant did so despite not having a written policy pertaining to "do not call" requests.

85. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

86. Defendant did so despite not recording or honoring "do not call" requests.

87. Defendant sent two or more telemarketing text messages to Plaintiff and putative Internal Do Not Call Class Members' telephone numbers in a 12-month period.

88. Plaintiff and putative Internal Do Not Call Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

89. Plaintiff and putative Internal Do Not Call Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violations of Texas § 305.053 Class
**(On Behalf of Plaintiff and the Texas § 305.053 Class)**

90. Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

91. Defendants placed, or had placed on its behalf, telemarketing telephone calls to Plaintiff's and Texas § 305.053 Class Members' telephone numbers.

92. Each of these calls violated 47 U.S.C. § 227.

93. Plaintiff and Texas § 305.053 Class Members are entitled to:

   a. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

   b. the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

   c. the greater of $1,500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (see Tex. Bus. & Com. Code §304.053(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing her counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227(c);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages;

F. Pre- and post-judgment interest;

G. An award of reasonable attorneys' fees and costs; and

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

        Respectfully submitted,

By:    */s/ Chris R. Miltenberger*
        Chris R. Miltenberger
        Texas Bar Number: 14171200

**The Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Max S. Morgan, Esquire
Eric H. Weitz, Esquire
THE WEITZ FIRM, LLC
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

**Attorneys for Plaintiff**